**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE APPLICATION OF
THE ASSOCIATED PRESS; CABLE NEWS
NETWORK, INC.; THE NEW YORK TIMES CO.;
POLITICO LLC; AND WP CO., LLC, d/b/a THE
WASHINGTON POST FOR ACCESS TO
CERTAIN SEARCH WARRANT MATERIALS

Case: 1:19−mc−00174
Assigned To : Cooper, Christopher R.
Assign. Date : 10/11/2019
Description: Misc.

## MOTION FOR PUBLIC ACCESS TO CERTAIN SEARCH WARRANT MATERIALS

The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times

Company ("The Times"), POLITICO LLC ("Politico") and WP Co., LLC, d/b/a/ the Washington

Post (the "Post") (collectively, the "Media Coalition"), by and through their undersigned

attorneys, respectfully move this Court pursuant to Local Criminal Rule 57.6 for an order

unsealing search warrant materials pertaining to the prosecution of Michael T. Flynn, the former

National Security Advisor for President Donald Trump.  Specifically, and as described more

fully in the accompanying Memorandum of Points and Authorities in Support of this Motion, the

Media Coalition seeks access to the warrants, applications, supporting affidavits, and returns

relating to all search, seizure and Stored Communications Act warrants issued in this District

pertaining to the Flynn prosecution (the "Warrant Materials").

### Factual and Procedural Background:

While he was a member of President-elect Trump's transition team, Flynn had a series of

telephone conversations with Russia's then-ambassador to the United States, Sergey Kislyak.

Statement of the Offense at 2-4.  FBI agents interviewed Flynn at the White House about these

Russian contacts on January 24, 2017, just days after his appointment as President Trump's

National Security Advisor.  *Id.* at 1-2.  Flynn has since admitted that, in that interview, he lied



**RECEIVED**

OCT 1 1 2019

Clerk, U.S. District and
Bankruptcy Courts

about the content of those telephone conversations with the Russian ambassador. *Id.* Flynn

falsely denied discussing U.S. sanctions on Russia and also falsely denied requesting that Russia

oppose a United Nations Security Council resolution regarding Israeli settlements in the West

Bank. *Id.* at 2-4.

Flynn pleaded guilty on December 1, 2017, to making false statements to the government

in violation of 18 U.S.C. § 1001. *Id.* at 1. In addition to the lies he told during his FBI

interview, Flynn also admitted that he filed a false report with the Justice Department regarding

his work as an agent for the government of Turkey. *Id.* at 5.

Flynn's cooperation with the government regarding the Russia Investigation and other

prosecutions was complete as of the end of August 2019. *See* Joint Status Report, *Flynn* (Aug.

30, 2019), Dkt. 107, at 2, 4. Flynn's sentencing is currently set for December 18, 2019. *See*

Minute Order, *Flynn* (Sept. 10, 2019). Although Flynn has not sought to withdraw his guilty

plea, his counsel has accused the Government of withholding exculpatory material and moved to

compel production of it. *See* Flynn Br. in Supp. of Mot. to Compel Production of Brady Material

and for Order to Show Cause, *Flynn* (Aug. 30, 2019), Dkt. 109, at 4 (accusing prosecutors of

"hiding *Brady* material" that purportedly "destroyed the credibility of their primary witness [and]

impugned their entire case against Mr. Flynn, while at the same time putting excruciating

pressure on him to enter his guilty plea and manipulating or controlling the press to their

advantage to extort that plea").

**Applicants' Interest in the Matters:**

The Media Coalition seeks access to the Warrant Materials to fulfill their role of

informing the American public about issues fundamental to our democracy. The Flynn

prosecution is of overriding public interest because it involves the integrity of the political

2

process and the ability of the justice system to fairly and effectively investigate and prosecute the

President's former National Security Advisor. *See Citizens for Responsibility & Ethics in Wash.*

*v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public

interest in shining a light on the FBI's investigation of major political corruption" and

importance of materials that "shed light on how the FBI and the DOJ handle the investigation of

crimes that undermine the very foundation of our government"). The gravity and importance of

this prosecution is among the highest of any in our nation's history, and therefore the public's

interest in the transparency of that investigation could not be greater. As set forth in the

accompanying Memorandum of Points and Authorities, the public has qualified rights of access

to these materials under the First Amendment and the common law, and no compelling

governmental interests justify the continued wholesale sealing of the Warrant Materials.

**Relief Requested:**

By this Motion, the Media Coalition seeks access to the Warrant Materials. The Warrant

Materials to which the Media Coalition seeks access include all warrants, applications,

supporting affidavits, and returns relating to all search, seizure and Stored Communications Act

warrants pertaining to the Flynn prosecution. For those materials produced to Flynn, the Media

Coalition seeks access to them in the form produced to Flynn.

WHEREFORE, for the reasons stated herein and in the accompanying Memorandum of

Points and Authorities, the Media Coalition respectfully requests that the Court enter an order

unsealing the requested Warrant Materials, and further that, if the Court determines that any

portion of the Warrant Materials may at this time remain sealed, the Court enter an order that the

remaining portions of the Warrant Materials be unsealed three months from the date of its order,

absent a showing at that time by the Government or other interested party that continued sealing

is appropriate.

## REQUEST FOR HEARING

The Media Coalition respectfully requests an oral hearing on this Motion.

Respectfully submitted,

Dated: October 11, 2019                    BALLARD SPAHR LLP


By: _____

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News
Network, Inc.; The New York Times Co.;
POLITICO LLC; and WP Co., LLC, d/b/a/ the
Washington Post*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION OF
THE ASSOCIATED PRESS; CABLE NEWS
NETWORK, INC.; THE NEW YORK TIMES CO.;
POLITICO LLC; AND WP CO., LLC, d/b/a THE
WASHINGTON POST FOR ACCESS TO
CERTAIN SEARCH WARRANT MATERIALS

Case: 1:19-mc-00174
Assigned To : Cooper, Christopher R.
Assign. Date : 10/11/2019
Description: Misc.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
## PUBLIC ACCESS TO CERTAIN SEARCH WARRANT MATERIALS

BALLARD SPAHR LLP

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com

1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press, Cable News
Network, Inc., The New York Times Co., POLITICO
LLC and WP Co., LLC, d/b/a the Washington Post*

## PRELIMINARY STATEMENT

The public interest in receiving information regarding Special Counsel Robert Mueller's now-completed investigation into Russia's interference in the 2016 elections (the "Russia Investigation") – and, specifically, the prosecution of the former White House National Security Advisor for lying about his dealings with foreign governments – is beyond question. Through this action, The Associated Press ("AP"), Cable News Network, Inc. ("CNN"), The New York Times Company ("The Times"), POLITICO LLC ("Politico") and the WP Co., LLC, d/b/a/ the Washington Post (the "Post") (collectively, the "Media Coalition") seek to unseal court records concerning the prosecution of Michael T. Flynn ("Flynn") to provide more information to the American public about this vital issue.

Specifically, the Media Coalition seeks to vindicate the public's First Amendment and common-law right of access to the warrants, applications, supporting affidavits, and returns relating to all search, seizure, or Stored Communications Act (18 U.S.C. § 2703) warrants relevant to the Flynn prosecution (the "Warrant Materials").

The Warrant Materials should be released because they are records to which the public has qualified access rights under both the First Amendment and the common law. The First Amendment access right can be overcome only by a showing that secrecy is necessary to protect a compelling interest, and even then, any sealing must be narrowly tailored to serve that interest. To be sure, there are significant interests that arguably may be at stake, such as protecting the integrity of any ongoing investigations, the secrecy of grand jury proceedings, the identities of confidential informants and the privacy of potentially innocent people. Those interests, however, are insufficient to overcome the overwhelming public interest in these materials and can in any event be served by narrowly tailored redactions to the documents. Under the common law, courts balance the public's right to information about the workings of the criminal justice system

1

against the legitimate countervailing interests of the government. In this case, that balance tips

decisively in favor of the public. This Court, therefore, should order the Warrant Materials to be

released, subject only to those precisely targeted redactions necessary to protect greater interests.

## BACKGROUND

**I.      The Special Counsel's Investigation of Russian Interference In The 2016 Election**

As is now common knowledge, U.S. intelligence agencies have concluded that, during

the 2016 presidential election, Russia engaged in an unprecedented effort to influence,

undermine and discredit our democratic process with the goal of supporting the candidacy of

President Donald Trump. Office of the Director of National Intelligence, *Assessing Russian*

*Activities and Intentions in Recent US Elections* ("*Intelligence Assessment*"), ii (Jan. 6, 2017),

https://www.dni.gov/files/documents/ICA_2017_01.pdf; *see also, e.g.*, S. Select Comm. On

Intelligence, *The Intelligence Community Assessment: Assessing Russian Activities and*

*Intentions in Recent U.S. Elections*, 3 (July 3, 2018),

https://www.intelligence.senate.gov/sites/default/files/publications/ssci_ica.pdf (concurring with

intelligence community's findings and stating that "the Committee's investigation has exposed a

far more extensive Russian effort to manipulate social media outlets to sow discord and to

interfere in the 2016 election"). As part of that effort, Russian intelligence deployed a network

of online "trolls" directed by the St. Petersburg-based Internet Research Agency to plant divisive

political messages – primarily, but not exclusively, critical of Democratic nominee Hillary

Clinton – online and in social media. *Intelligence Assessment* at 2-4.

Beginning in the summer of 2016, the FBI and other federal authorities began a

counterintelligence and criminal investigation focused on the Russian government's "efforts to

interfere in the 2016 presidential election, including the nature of any links between individuals

associated with the [Trump] Campaign and Russia, and whether there was any coordination

2

between the Campaign and Russia's efforts." Statement of the Offense, *United States v. Flynn* ("*Flynn*"), No. 1:17-cr-00232-EGS (D.D.C. Dec. 1, 2017), Dkt. 4, at 1.

There is no need to burden this Court with the details of the Russia Investigation – and criticism of it by President Trump and his supporters – that are well known. The Special Counsel's Office ("SCO") secured the guilty pleas of Flynn and four other Trump campaign staffers or advisors, including his former campaign chairman and his deputy. *See generally* U.S. Dep't of Justice, *Special Counsel's Office*, http://www.justice.gov/sco (listing indictments brought and guilty pleas secured by SCO). The SCO also secured indictments of the Internet Research Agency, more than two dozen individuals, and two other corporate entities alleged to have been employed by or associated with the GRU's election interference efforts. *See id.*

## II.  The Prosecution of Former National Security Advisor Michael Flynn

The FBI's interest in Flynn arose well before Robert Mueller's appointment as special counsel in May 2017. While he was a member of President-elect Trump's transition team, Flynn had a series of telephone conversations with Russia's then-ambassador to the United States, Sergey Kislyak. Statement of the Offense at 2-4. FBI agents interviewed Flynn at the White House about these Russian contacts on January 24, 2017, just days after his appointment as President Trump's National Security Advisor. *Id.* at 1-2. Flynn has since admitted that, in that interview, he lied about the content of those telephone conversations with the Russian ambassador. *Id.* Flynn falsely denied discussing U.S. sanctions on Russia and also falsely denied requesting that Russia oppose a United Nations Security Council resolution regarding Israeli settlements in the West Bank. *Id.* at 2-4.

Flynn pleaded guilty on December 1, 2017, to making false statements to the government in violation of 18 U.S.C. § 1001. *Id.* at 1. In addition to the lies he told during his FBI

3

interview, Flynn also admitted that he filed a false report with the Justice Department regarding his work as an agent for the government of Turkey. *Id.* at 5.

Flynn's cooperation with the government regarding the Russia Investigation and other prosecutions was complete as of the end of August 2019. *See* Joint Status Report, *Flynn* (Aug. 30, 2019), Dkt. 107, at 2, 4. Flynn's sentencing is currently set for December 18, 2019. *See* Minute Order, *Flynn* (Sept. 10, 2019). Although Flynn has not sought to withdraw his guilty plea, his counsel has accused the Government of withholding exculpatory material and moved to compel production of it. *See* Flynn Br. in Supp. of Mot. to Compel Production of Brady Material and for Order to Show Cause, *Flynn* (Aug. 30, 2019), Dkt. 109, at 4 (accusing prosecutors of "hiding *Brady* material" that purportedly "destroyed the credibility of their primary witness [and] impugned their entire case against Mr. Flynn, while at the same time putting excruciating pressure on him to enter his guilty plea and manipulating or controlling the press to their advantage to extort that plea").

### III.   The Records Sought By The Media Coalition

As noted above, the Media Coalition seeks the unsealing of Warrant Materials pertaining to the Flynn case. Specifically, the Media Coalition seeks records associated with the application for, issuance of, and returns regarding search, seizure and Stored Communications Act warrants related to the Flynn prosecution. Because these warrant actions are sealed, the Media Coalition is unaware both of the precise number of warrants involved and the case numbers associated with those warrants. The Media Coalition seeks access to materials related to all of these warrants, regardless of whether their existence is publicly known. For those Warrant Materials produced to Flynn in discovery, the Media Coalition respectfully requests access to those materials in the form produced to Flynn.

## ARGUMENT

The public has a presumptive, albeit qualified right of access to search, seizure and

Stored Communications Act warrant materials that is particularly urgent in this case given the

importance of the Russia Investigation to our democracy and Flynn's upcoming sentencing. This

qualified right, which arises under both the First Amendment and the common law, requires the

release – with redactions, where necessary – of the Warrant Materials.

I. **THE PUBLIC'S FIRST AMENDMENT AND COMMON LAW RIGHTS OF ACCESS ATTACH TO THE WARRANT MATERIALS AND CANNOT BE OVERCOME HERE**

Warrants, including the applications, affidavits and returns in connection therewith, are

presumptively public both under the law and as a matter of standard practice in this and other

federal courts. *See, e.g.*, *In re Application of WP Co.* ("*In re WP II*"), 201 F. Supp. 3d 109, 121

(D.D.C. 2016) ("warrant applications and receipts are routinely filed with the clerk of court

without seal" (quoting *In re Application of N.Y. Times Co. for Access to Certain Sealed Court

Records* ("*In re NYT*"), 585 F. Supp. 2d 83, 88 (D.D.C. 2008))); *United States v. Bus. of Custer

Battlefield Museum & Store* ("*Custer Battlefield*"), 658 F.3d 1188, 1193-94 (9th Cir. 2011)

(same); Fed. R. Crim. P. 41(i) ("The magistrate judge to whom the warrant is returned must

attach to the warrant a copy of the return, of the inventory, and of all other related papers and

must deliver them to the clerk in the district where the property was seized."). In this Court "the

routine practice is to make warrant materials publicly available after a search has been executed

and a return is available." *In re NYT*, 585 F. Supp. 2d at 88 n.8.

Federal courts considering the question routinely have held that the public has a qualified

right of access to warrant materials, though there has been some inconsistency in the courts'

conclusions regarding the stage of the proceedings at which that right attaches and whether it

arises under the First Amendment, the common law, or both. *See, e.g.*, *In re Leopold*, 327 F.

5

Supp. 3d 1, 22 (D.D.C. 2018) (SCA warrant materials are subject to common-law access right);
*In re Application of WP Co. LLC* ("*In re WP I*"), No. 16-mc-351 (BAH), 2016 U.S. Dist. LEXIS
55924, at *5 (D.D.C. Apr. 1, 2016) (recognizing First Amendment right of access to search
warrant records issued during investigation that had been closed); *In re NYT*, 585 F. Supp. 2d at
87-88 (recognizing both First Amendment and common-law right of access to warrant materials
after conclusion of investigation); *In re Search Warrants Issued on May 21, 1987*, No. 87-186
(JHG), 1990 U.S. Dist. LEXIS 9329, at *10 (D.D.C. July 26, 1990) (recognizing common-law
right of access to search warrant materials after indictment); *United States v. Sealed Search
Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (common-law right of access can apply to pre-
indictment warrant materials; trial court must determine whether to unseal on case-by-case
basis); *Custer Battlefield*, 658 F.3d at 1193-94 (recognizing common-law right of access to
warrant materials after completion of criminal investigation); *In re Search Warrant for
Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573-74 (8th Cir. 1988) (recognizing First
Amendment right of access to search warrant materials in ongoing criminal investigation). The
D.C. Circuit has not directly ruled on the precise questions of: (1) whether the right of public
access to warrant materials attaches upon the warrant's execution and return to the issuing court
or (2) whether that access right instead attaches only once the subject or target of the warrant has
been indicted or pleaded guilty. Under the analysis set forth by the D.C. Circuit and applied by
other courts in this district, however, the First Amendment and common-law public access rights
to warrant materials both attach upon return, not at some later point in the prosecution. And
even if it were the case that these rights of access attached only after the target of a warrant has
been convicted or pleaded guilty, in this case Flynn pleaded guilty nearly two years ago, the

.                                              6

Special Counsel's Office has concluded its investigation, and Flynn is scheduled to be sentenced in December.

### A.   The First Amendment Provides A Right Of Access To Warrant Materials

It is well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents." *In re WP II*, 201 F. Supp. 3d at 117 (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-04 (1982)).  This right of access arises where the court answers two questions affirmatively: "(1) whether the place and process have historically been open to the press and general public, and (2) whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re NYT*, 585 F. Supp. 2d at 87 (quoting *Press-Enter. Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8-9 (1986)).  Applying this "experience and logic" test, courts in this district have recognized over and over again that a First Amendment right of public access applies to warrant materials at the latest after an investigation has concluded. *In re WP I*, 2016 U.S. Dist. LEXIS 55924, at *5 ("[U]nder the First Amendment, the [public] has a qualified right to access court records associated with searches conducted in furtherance of [a] now-closed . . . [i]nvestigation."); *In re NYT*, 585 F. Supp. 2d at 88 ("Applying the 'experience' and 'logic' test in the first instance to the question of post-investigation warrant materials, this Court concludes that there is a qualified First Amendment right of access.").[1]  Here, experience and logic compel the conclusion that the First Amendment provides a right of access to the warrant materials the Media Coalition seeks from the now-concluded investigation of Flynn, regardless of whether any related investigations (if any still exist) can formally be deemed "concluded."

---

[1] The court in *In re NYT* held that there was no ongoing investigation although the government argued that it had not "formally closed" the "Amerithrax" probe.  The court noted that the government believed the 2001 anthrax attacks were the work of one person, acting alone, and that person had committed suicide. *Id.* at 88 n.7.

First, as discussed *supra*, warrant materials have long been presumptively public, usually upon the return of the executed warrant, both in the District of Columbia and other federal courts. *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that warrant materials have been publicly available as matter of "routine historical practice"). And, as Judge Lamberth recognized in *In re NYT*, the fact that there is a common-law right of access to warrant materials also meets the "experience" prong of the test. 585 F. Supp. 2d at 89 ("Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials."); *see also infra* Section I.B. Experience, therefore, counsels that warrant materials should be presumptively available to the public upon the warrant's execution and return to the magistrate, and in any event no later than the point where an indictment has been issued or a guilty plea entered. In this case, that threshold was crossed in December 2017 with Flynn's guilty plea.

Second, courts also have recognized several strong public policies that are served by public access to warrant materials and that accordingly satisfy the "logic" prong of the test. As the Fifth Circuit recently observed, "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *Sealed Search Warrants*, 868 F.3d at 395; see also *In re NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that judicial processes are fair and that there is nothing to hide."). This openness "'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *Id.* (citation omitted). Especially given the criticism by the President and his supporters that the Russia Investigation and prosecutions arising from it were illegitimate– and

Flynn's accusations of prosecutorial and investigative misconduct in his case – these public policy considerations firmly support the First Amendment right of access to these materials now that Flynn has pleaded guilty and the Russia Investigation is concluded.

### B.     The Common-Law Right Of Access Also Applies To Warrant Materials

The Supreme Court has recognized that, under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This common-law right is "broader, but weaker" than the First Amendment access right. *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted). Courts in the D.C. Circuit have repeatedly and consistently held that warrant materials are "judicial documents" subject to this common-law right of access because they are "central to a court's probable cause determination." *Id.* at 129 (quoting *Custer Battlefield*, 658 F.3d at 1193); *see also In re Access to Certain Sealed Warrant Materials* ("*In re Access*"), No. 19-mc-44 (BAH), 2019 U.S. Dist. LEXIS 85285, at *8-10 (D.D.C. May 21, 2019) (unsealing records of search warrants issued in Russia Investigation pursuant to the common-law access right); *In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting that government had conceded that warrant materials are subject to common-law right of access); *In re Search Warrant*, No. 00-138M-01 (JMF), 2000 WL 1196327, at *1 (D.D.C. July 24, 2000) ("[T]here is a general recognition among the courts of a right of access to the affidavit filed in support of an application for a search warrant. This flows from the common law right of access to judicial records."); *In re Search Warrants Issued on May 21, 1987*, 1990 U.S. Dist. LEXIS 9329, at *10 (recognizing common-law right of access to affidavits in support of search warrants).

.

**C.     No Compelling Interest Justifies The Continued Blanket Sealing Of The Warrant Materials**

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret serves a compelling governmental interest and is narrowly tailored to serve that interest. *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585 F. Supp. 2d at 91. The Supreme Court has directed that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court* (*"Press-Enterprise I"*), 464 U.S. 501, 510 (1984).

It is possible that the government can articulate one or more compelling interests at stake here. But the continued categorical sealing of all of the Warrant Materials cannot properly be said to be narrowly tailored to serve any such interest, which can instead be served by targeted redactions. Because of the First Amendment rights involved and the pressing public interest in the Flynn prosecution, the government (or any other party seeking secrecy) should be required to show (1) what specific compelling interest is served by the sealing or redaction of each specific document and (2) why sealing, rather than redaction or other mitigation, is the most narrowly tailored means to serve that interest. The Media Coalition respectfully submits that neither the government nor any other party will be able to justify blanket sealing of the Warrant Materials at issue here.

Perhaps the most obvious compelling interest the government might be expected to cite is the need to protect the integrity of an ongoing investigation. *See, e.g., Custer Battlefield*, 658 F.3d at 1195 n.5. Here, the investigation of Flynn – as well as his cooperation in other aspects of the Special Counsel's probe – is complete, and the Russia Investigation itself concluded earlier this year. Moreover, this is not a situation in which the existence of the investigation is

unknown. The Media Coalition does not seek in any way to jeopardize or impede any related

investigations that may still be ongoing, if any exist. But "not every release of information

contained in an ongoing criminal investigation file will necessarily affect the integrity of the

investigation." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004)

(government must provide "specific underlying reasons for the district court to understand how

the integrity of the investigation reasonably could be affected by the release of such information"

to justify sealing judicial records). Releasing the warrant materials already provided to Flynn,

for example, would be unlikely to jeopardize any ongoing investigation because they have been

provided to a prominent defendant whose cooperation with the government has been publicly

known for nearly two years. Likewise, unsealing warrant materials directly related to other

defendants who have been indicted or pleaded guilty would be unlikely to interfere with the

investigation of those individuals. Similarly, release of warrant materials regarding Russian or

Turkish nationals or others outside of the jurisdictional reach of U.S. courts likely would not

interfere with those portions of the investigation related to the already-indicted foreign nationals.

And the release of information that already has been widely publicized by the news media cannot

threaten an ongoing criminal investigation. *Wash. Post v. Robinson*, 935 F.2d 282, 291-92 (D.C.

Cir. 1991) (government did not meet its burden to justify sealing plea agreement to protect

ongoing investigation when plea already had been reported by news media). To the extent the

Warrant Materials contain specific pieces of information that the government can show would

compromise a specific aspect of a specific ongoing investigation if publicly disclosed at this

time, those specific pieces of information can be redacted to allow for the maximum possible

public access to the rest of these judicial records.

Other interests that the government might assert are at stake include the need to guard the secrecy of grand jury proceedings, shield the identities of confidential informants, and protect the Sixth Amendment rights of the accused.  As for the latter concern, those considerations are not in play for defendants such as Flynn who have already pleaded guilty.  More broadly, "[i]n many cases, courts can accommodate these concerns by redacting sensitive information rather than refusing to unseal the materials entirely." *Custer Battlefield*, 658 F.3d at 1195 n.5.  The Media Coalition does not object to redactions or withholdings that are narrowly tailored to serve these interests, such as removing the names of and identifying information regarding confidential informants whose identifies, in fact, currently remain confidential.

Privacy considerations may in some limited circumstances qualify as a compelling interest, but it bears emphasis that "privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access." *United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *see also, e.g., United States v. Cohen*, 366 F. Supp. 3d 612, 625 (S.D.N.Y. 2019) ("Shielding third parties from unwanted attention arising from an issue that is already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny." (citation omitted)).  One situation in which privacy interests did rise to this level was presented in *In re WP II*, in which the court denied the Post's request to unseal warrant information related to an ancillary investigation involving the "sexual preferences and partners" of a cooperating witness in the investigation of campaign finance violations in the District.  201 F. Supp. 3d at 126-27.  However, there is no indication that any of the Warrant Materials related to Flynn involve such highly intimate details that are not directly relevant to the core of the investigation – and, again, any such concerns could be adequately satisfied by redactions rather than indiscriminate sealing.  Likewise, the

12

privacy interests of potentially innocent third parties can be protected in the same way via targeted and specific redactions. *In re WP I*, 2016 U.S. Dist. LEXIS 55924, at *6-7.

Indeed, the nature of the Russia Investigation is such that many, if not most, of those potentially identified in the Warrant Materials are people who either already have been publicly identified (or identified themselves) in connection with the investigation or have a diminished privacy interest because they voluntarily sought public office and/or positions in the maelstrom of a hotly contested presidential campaign. *See In re NYT*, 585 F. Supp. 2d at 93 n.14 ("injury to official reputation is an insufficient reason for repressing speech that would otherwise be free" (quoting *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2001))). For example, federal prosecutors involved in convicting a sitting U.S. Senator on corruption charges that were later vacated because of prosecutorial misconduct did not have a privacy interest in sealing a report about their misdeeds. *In re Special Proceedings*, 842 F. Supp. 2d 232, 246 (D.D.C. 2012) (noting that "the identity of the subjects was known from the outset of the investigation, the matters under investigation were largely known to the public from the outset and arose from the subject attorneys' conduct during the proceedings in a highly-publicized criminal trial"). Further, there is no compelling interest in protecting the "privacy" of facts that are already public. *Robinson*, 935 F.2d at 291-92; *Va. State Police*, 386 F.3d at 579; *Loughner*, 769 F. Supp. 2d at 1196.

In sum, insofar as the public record reveals, there is no apparent interest at stake sufficiently compelling to justify the continued wholesale sealing of the Warrant Materials in the face of the public's right of access to them under the First Amendment, and any compelling interests that conceivably may be implicated could be served by narrowly tailored redactions.

**D.**     **The Public's Interest In Disclosure Outweighs Any Need For Secrecy Of The Warrant Materials**

In determining whether the strong common-law presumption in favor of public access requires unsealing of a particular judicial record, a court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118 (citation omitted). Courts considering whether to order disclosure pursuant to the common-law right must weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980) (additional citation omitted)); *accord In re NYT*, 585 F. Supp. 2d at 92; *In re WP II*, 201 F. Supp. 3d at 118. Here, an analysis of the five relevant *Hubbard* factors[2] leads to the conclusion that the Warrant Materials also should be released pursuant to the common-law access right.

The first and second factors weigh heavily – and conclusively – against continued secrecy. It is beyond debate that the public interest in access to the Warrant Materials could not be higher. *Cohen*, 366 F. Supp. 3d at 622 (recognizing the "substantial" public interest in materials related to the Russia Investigation); *see also, e.g., Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political

---

[2] As Judge Lamberth explained, the sixth *Hubbard* factor was unique to that case, "in which a private party sought to prevent disclosure of documents recovered during a search." *In re NYT*, 585 F. Supp. 2d at 92 n.13.

office."). The Flynn prosecution goes to the heart of the integrity of the political process, the possible compromise of high-ranking government officials by foreign governments, the potential corruption or other misconduct of the President of the United States – or, as some of the President's supporters and Flynn's counsel have argued, a corrupt conspiracy by some in law enforcement to harm the President – and the ability of the justice system to fairly and effectively investigate and, where necessary, prosecute any of these potential crimes. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"). Further, Flynn has alleged "egregious Fourth Amendment violations" in his prosecution. *Flynn*, Dkt. 109, at 8-9. Release of the Warrant Materials would serve the public interest by allowing the public to better evaluate such claims.

The President's former campaign chairman and his deputy and two former campaign aides have pleaded guilty to committing felonies, as has Flynn. And, of course, one of the ultimate questions in the Russia Investigation was whether the President himself unlawfully attempted to influence or obstruct the probe. The gravity and importance of this criminal investigation is second to none in our nation's history, and therefore the public's interest in the transparency of that investigation – especially now that it has been concluded – is paramount to all but the most crucial constitutional considerations.

The third and fourth factors – any objections to unsealing, the identity of the objectors, and the strength of the objections – remain to be determined, but it is difficult to conceive of circumstances that would be sufficient to overcome the public interest in release of the Warrant

Materials. As discussed *supra*, the individuals most directly implicated by the Warrant Materials either have already been indicted or pleaded guilty, are beyond this Court's jurisdictional reach, or are among the most powerful and public political figures of our time. Consequently, any legitimate objections they may raise could adequately be addressed by targeted redactions. *In re Access*, 2019 U.S. Dist. LEXIS 85285, at *8-10 (approving release of warrant materials related to President Trump's former personal attorney with names of some third parties redacted); *Cohen*, 366 F. Supp. 3d at 625-26 (same). Finally, the risk of prejudice to any ongoing investigations or prosecutions, while not unimportant, pales in comparison to the public interest and also may be appropriately mitigated with any necessary redactions.

The public's common-law right to access the Warrant Materials, therefore, far outweighs any countervailing considerations, and the blanket sealing of them should not continue.

### E.    The Court Should Not Allow Indefinite Sealing

Finally, if the Court should determine that some of the Warrant Materials may remain sealed to protect the privacy of one or more individuals or the integrity of one or more ongoing investigations, the public should be allowed access to those materials once the justification for sealing expires: either when the shielded individuals' identities become known and/or the currently ongoing investigations are complete. The criminal investigations involved in this matter will not continue indefinitely. As the Second Circuit observed, "the government's interest in its ongoing investigation does not ongo [sic] forever." *United States v. Moten*, 582 F.2d 654, 661 (2d Cir. 1978); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 947 (9th Cir. 1998) ("transcripts of public trial proceedings must be released when the factors militating in favor of closure no longer exist").

To avoid ongoing relitigation of public access to these Warrant Materials, therefore, the Media Coalition respectfully requests that, if any portions of the Warrant Materials are to remain

sealed, this Court retain jurisdiction to ensure that the records are made public promptly and automatically after the justification for their sealing expires. The Media Coalition requests that this Court set a "sunlight date" for any remaining sealed portions of the Warrant Materials three months from the date of its order in this action, at which time the records would be automatically unsealed by the Clerk absent a showing by the Government or another interested party that continued sealing is justified. Because openness, not secrecy, is the default condition for judicial records, such a sunlight provision would place the onus for continued sealing where it belongs: on the Government or other party who must persuade the Court that these public records must continue to be kept from public view. Other courts in this District and elsewhere have imposed similar requirements. *In re Access*, 2019 U.S. Dist. LEXIS 85285, at *10 (setting "sunlight date" for search warrant materials in Russia Investigation three months from date of order); *Cohen*, 366 F. Supp. 3d at 634 (same); *see also, e.g., Loughner*, 769 F. Supp. 2d at 1196 (stating that "redacted information will be unsealed as soon as it becomes appropriate"); *United States v. Strevell*, No. 05-CR-477(GLS), 2009 U.S. Dist. LEXIS 19020, at *21 (N.D.N.Y. Mar. 4, 2009) (setting one-year sunlight date upon which sealing would expire "absent a timely motion to renew from the government" or defendant); *In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (ordering that warrant materials be unsealed if no indictment issued in case within three months subject to government's opportunity to explain *in camera* why continued sealing was necessary).

## CONCLUSION

For all of the foregoing reasons, the Media Coalition respectfully requests that this Court grant its motion and enter an order unsealing the Warrant Materials, and further that, if the Court determines that any portion of the Warrant Materials may remain sealed, the Court enter an order setting a sunlight date three months from the date of its order.

Respectfully submitted,

Dated: October 11, 2019                    BALLARD SPAHR LLP

By:

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press, Cable News
Network, Inc., The New York Times Co.,
POLITICO LLC and WP Co., LLC, d/b/a the
Washington Post*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ASSOCIATED PRESS; CABLE NEWS NETWORK, INC.; THE NEW YORK TIMES CO.; POLITICO LLC; AND WP CO., LLC, d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEARCH WARRANT MATERIALS | Case No. |

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2019, I caused true and correct copies of the foregoing Motion for Public Access to Certain Search Warrant Materials, along with true and correct copies of the Memorandum of Points and Authorities in support thereof and the proposed order, to be served via electronic mail and U.S. Mail on the following:

Brandon L. Van Grack
Special Assistant U.S. Attorney
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 233-0968

Jocelyn Ballantine
Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530
(202) 252-7252

*Counsel for the United States*

Sidney Powell
Molly McCann
SIDNEY POWELL, P.C.
2911 Turtle Creek Blvd. #300
Dallas, TX 75219
Tel: (214) 707-1775
sidney@federalappeals.com
molly@federalappeals.com

Jesse R. Binnall

Lindsay R. McKasson
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, FL 32162
Tel: (352) 399-0531
Fax: (352) 240-3489

*Counsel for Michael T. Flynn*

By: _____

Jay Ward Brown (D.C. Bar No. 437686)
brownjay@balladspahr.com
Matthew E. Kelley (D.C. Bar No. 1018126)
kelleym@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW
Washington, D.C. 20006-1157
T: (202) 508-1136
F: (202) 661-2299

*Counsel for The Associated Press; Cable News
Network, Inc.; The New York Times Co.;
POLITICO, LLC; and WP Co., LLC, d/b/a/ the
Washington Post*

2